IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, LOCAL 2187,<br><br>    Plaintiff,<br><br> v.<br><br>JACQUELINE MARSHALL,<br><br>    Defendant. | CIVIL ACTION<br>NO. 18-723 |

**OPINION**

**Slomsky, J.**                                    **April 16, 2021**

**I. INTRODUCTION**

  The American Federation of State, County, and Municipal Employees ("AFSCME") is an international labor organization with several local affiliates throughout the country. In Philadelphia, Pennsylvania, one of AFSCME's affiliates is Local 2187, which is subordinate to AFSCME. All Local 2187 members must abide by the Local's Constitution and the AFSCME Constitution, the latter of which contains procedures for hearing and resolving charges filed against members for wrongdoing.

  In 2014, members of Local 2187 submitted charges to the AFSCME Judicial Panel alleging, inter alia, that then-President Defendant Jacqueline Marshall violated the two Constitutions by overpaying her own salary. A hearing was held and Defendant was found in violation of both Constitutions, was removed as President, and was ordered to reimburse Local 2187 for the overpayment. When she did not reimburse Local 2187, members filed new charges against her in 2016 for failing to reimburse the Local and for violating the AFSCME Constitution by remaining on the payroll after her removal as President. Defendant was again found in violation

1

and was ordered to reimburse Local 2187 for her salary overpayment plus the amount paid to her when she improperly remained on the payroll.

Before the Court for disposition is Plaintiff Local 2187's Motion for Judgment on the Pleadings. (Doc. No. 9.) In the Motion, Plaintiff argues it is entitled to judgment in its favor and against pro se Defendant Marshall on the claims alleged in the two-Count Complaint: (1) breach of contract under Section 301 of the Labor Management Relations Act of 1947, codified in 29 U.S.C. § 185; and (2) breach of contract under Pennsylvania law. On both Counts, Plaintiff asks the Court to compel Defendant to make the restitution payments as ordered by the AFSCME Judicial Panel. Defendant has not filed a Response to the Motion.

For reasons stated infra, Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 9) will be denied.

## II. BACKGROUND[1]

### A. The AFSCME Constitution

Plaintiff Local 2187 is a subordinate body of the AFSCME international labor organization. (See Doc. Nos. 1 ¶¶ 1-2; 6 at 2 ¶¶ 1-2.) As a subordinate body, Local 2187 and its members are "contractually and legally bound by the provisions of the AFSCME Constitution."[2] (Doc. No. 1 ¶ 7; see also Doc. Nos. 6 at 2 ¶ 7; 1-4 at 71, 114.)

---

[1] The factual background is taken from the undisputed facts in the Complaint (Doc. No. 1) and Defendant's Answer (Doc. No. 6), as well as the AFSCME Constitution (Doc. No. 1-4), the Local 2187 Constitution (Doc. No. 1-5), the AFSCME Judicial Panel decision by presiding Panel Member Steve Preble (Doc. No. 1-6), and the second AFSCME Judicial Panel decision by presiding Panel Member Richard Abelson (Doc. No. 1-8).

[2] Article IX, Section 1 of the AFSCME Constitution states that "[t]he charter of each subordinate body shall conform to the Constitution, laws, rules, and regulations of the Federation . . . . The [AFSCME] shall afford such subordinate bodies all their rights and privileges as chartered unions of the [AFSCME] under the constitution, laws, rules and regulations of this Federation." (Doc. No. 1-4 at 71-72.) Article IX, Section 54 states that the AFSCME Constitution "shall

The AFSCME Constitution imposes a number of requirements upon subordinate bodies and their members. For example, it requires that: (1) each local have its own constitution, (2) all local members "promise to abide by the Constitution of the [AFSCME] and Local Union[,]" and (3) all elected officials "promise and pledge [they] will perform faithfully and with honor the duties of the office" they assume. (Doc. No. 1 ¶¶ 9-11; see also Doc. Nos. 6 at 3 ¶¶ 9-11; 1-4 at 89, 137.) Members have several rights under the AFSCME Constitution, one being the right to "file charges against any individual for actions taken while a member of the [AFSCME] or while a staff employee of [AFSCME] or a subordinate body." (Doc. No. 1-4 at 114.)

Article X of the AFSCME Constitution establishes procedures for hearing and resolving charges filed against a member. (See id.) Among the allowable charges set forth in Article X that a member can file against another member are the following:

> A. Violation of any provision of [the AFSCME] Constitution or of any officially adopted and approved constitution of a subordinate body to which the member being accused is subject.
>
> B. Misappropriation, embezzlement, or improper or illegal use of union funds.
>
> . . .
>
> F. Refusal or deliberate failure to carry out legally authorized decisions of the International Convention, the International President, the International Executive Board, the Judicial Panel, or of the convention or executive board of a subordinate body of which the accused is a part.

(Id. at 114-15.) Charges filed against an individual member are heard by the charged parties' local union trial body. (See id. at 116; Doc. Nos. 1 ¶¶ 15-16; 6 at 3 ¶¶ 15-16.) Charges filed against an executive board member, however, are heard by either "a single trial officer or a three-member

---

constitute a contract between the [AFSCME] and each of its subordinate bodies individually. All subordinate bodies shall at all times be subject to the provisions of the International Constitution." (Id. at 114.)

trial body" of the AFSCME Judicial Panel.  (Ids.)

Similar to formal judicial trials, "[c]harged parties are guaranteed enumerated rights" in Judicial Panel trials, including "the right to personal notice of the charges, the right to counsel at the proceeding, the right to present witnesses, the right to confront the accuser, the right to the presumption of innocence, and the right to refuse to testify."  (Doc. No. 1 ¶ 17; see also Doc. No. 1-4 at 119-120.)  The Judicial Panel may impose a variety of penalties should it find the charged party guilty, and the charged party may "appeal the decision to the full panel of the Judicial Panel" as well as "seek a final appeal of a decision by the full panel" by appealing to the AFSCME International Convention.  (Doc. No. 1 ¶¶ 19-21; see also Doc. No. 1-4 at 120-121, 130.)

### B. Defendant's Presidency of Local 2187

In the winter of 2012, Defendant was elected President of Local 2187 and officially assumed this role in March 2013.  (See Doc. No. 6 at 3-4 ¶¶ 28-29.)  As President, Defendant was the "full-time administrative and executive officer" of Local 2187 who was "contractually and legally bound by the AFSCME and Local Constitutions in her capacity as the elected chief executive officer of [Local 2187]."  (Doc. No. 1 ¶¶ 25, 29; see also Doc. No. 1-5 at 4.)  She "receive[d] compensation and expenses as established by the [Local 2187] executive board."  (Doc. No. 1 ¶ 25; see also Doc. No. 1-5 at 4.)

According to Local 2187's Personnel Practices Code Sections 4.01 and 4.015, Defendant's salary as President was to be paid at Executive Pay ("EP") Level 26, and "[a]ny step determination and annual anniversary adjustments [were to] be made in accordance with applicable Civil Service regulations . . . ."  (Doc. No. 1-6 at 3.)  Civil Service regulation 6.081 states that "[t]he minimum rate of pay for a class shall be paid upon appointment to the class[.]"  (Id. at 4.)  In other words, upon initial appointment to a salaried position, salary is set at Step 1 of the designated EP Level —the "minimum rate of pay."  When Defendant became President, however, she "was placed on

4

EP 26, Step 5, instead of being placed as required by the Personnel Practice Code" at EP 26, Step 1. (Id.)

### 1. The First AFSCME Judicial Panel

In August 2014, six members of Local 2187 submitted charges against Defendant and others[3] to the AFSCME Judicial Panel. (See Doc. Nos. 1 ¶¶ 14, 30; 6 at 3-4 ¶¶ 14, 30.) In the charges, the members alleged, inter alia, that Defendant violated the AFSCME and the Local Constitutions by overpaying her own salary. (See Doc. Nos. 1 ¶¶ 31; 6 at 4 ¶ 31.)

A 3-day trial was held on December 9, 2014, April 15, 2015, and April 23, 2015. (See Doc. No. 1 ¶ 34.) Presiding Judicial Panel Member Steve Preble ("Preble") issued his decision on July 6, 2015, finding Defendant "was paid a salary as President greater than she was entitled under the Local Constitution and the rules adopted by the local executive board for calculating a Local officer's salary." (Id. ¶¶ 36-37; see also Doc. No. 1-6 at 12.) Preble also found that the overpayment "extended to [Defendant's] buyout of vacation and sick leave[,]" and concluded that "her overpayment in salary violated Article X, Sections 2.B and 2.F of the AFSCME Constitution[4] and Article VII, Section 6 of the Local Constitution."[5] (Doc. No. 1 ¶¶ 39-40; see also Doc. No. 1-6 at 15-16.)

"For her violations of the AFSCME and Local Constitutions, Preble ordered [Defendant] to reimburse [Plaintiff] for the salary overpayment . . . occurring during her entire tenure as

---

[3] Plaintiff states that the six members filed charges against Defendant Marshall and "several other officers and members of [Local 2187], including Gary Bryant, the elected Secretary Treasurer . . . ." (Doc. No. 1 ¶ 30.)

[4] See Section II.A, supra.

[5] The relevant portion of Article VII, Section 6 of the Local Constitution states: "[t]he executive board may employ, terminate, fix the compensation and expenses of such staff as may be required to carry out effectively the functions of the local." (Doc. No. 1-5 at 5.)

President of [Local 2187]" which totaled $41,588.57.  (Doc. No. 1 ¶¶ 48, 55.)  Additionally, "Preble immediately removed [Defendant] as President of [Local 2187], suspended her right to hold or seek any elected position at any level of AFSCME for a period of four (4) years after the issuance of his decision, and ordered her expulsion from AFSCME if she did not make her restitution payment within sixty (60) days."  (Id. ¶ 49.)

Defendant appealed Preble's decision to the full AFSCME Judicial Panel, and on October 30, 2015 the full Panel affirmed the decision.  (See id. ¶¶ 50, 52; Doc. Nos. 1-8 at 2-3; 6 at 5 ¶¶ 50, 52.)  On the same day,[6] Defendant emailed Local 2187's Administrators "requesting that Local 2187 enter into an appropriate repayment agreement" with her.  (Doc. No. 6 at 22.)  In the email, Defendant "acknowledge[d] an overpayment for the period March 23, 2013 through June 30, 2014," but indicated she was "appealing . . . Preble's decision that overpayment continued beyond that date."  (Id.)  While it is not clear whether Defendant was referring to an appeal of the Preble decision or a final appeal of the full Judicial Panel decision, Defendant did not seek a final appeal of the full Judicial Panel decision.  (See Doc. Nos. 1 ¶ 53; 6 at 5 ¶ 53.)

    2.  **The Second AFSCME Judicial Panel**

On December 9, 2015, a Local 2187 Administrator emailed Defendant a repayment schedule, with restitution to be paid in monthly installments over a 48-month period starting in January 2016.  (See Doc. Nos. 1 ¶ 55; 6 at 5 ¶¶ 54-55; see also Doc. No. 6 at 19.)  Defendant replied to the email and stated that "[w]hile [she is] aware of the procedure, [she] find[s] the demand to be a hardship that would impact [her] family greatly."  (Doc. No. 6 at 19.)  Nevertheless, she "look[ed] forward to a reasonable and realist discourse regarding a resolution."  (Id.)

---

[6] The Court notes that the date "10/26/15" is written in the body of the email, but the email subject line shows the email was sent on October 30, 2015.  (See Doc. No. 6 at 21.)

6

Although Defendant discussed repayment plans with a Local 2187 Administrator, she did not make any payments. As a result, in March 2016 fourteen members of Local 2187 filed additional charges against Defendant and others with the Judicial Panel. (See Doc. Nos. 1 ¶ 56; 6 at 5 ¶ 56.) In the charges, the fourteen members alleged that Defendant violated the AFSCME Constitution (1) "when she failed to abide by the Preble decision and remit to [Local 2187] the monies due and owning [sic] for overpayment of salary[;]" (2) "when she purchased a transcript of the Preble proceeding using [Local 2187's] treasury without authorization of the local executive board[;]" and (3) "when she was paid her salary as President after issuance of the Preble [decision] on July 17, 2015 (when she was removed from office) until November 30, 2015." (Doc. Nos. 1 ¶¶ 58-60; 6 at 5-6 ¶¶ 58-60.)

A 1-day trial was held on May 9, 2016.[7] (See Doc. Nos. 1 ¶¶ 62-63; 6 at 6 ¶¶ 62-63.) Presiding Judicial Panel Member Richard Abelson ("Abelson") issued his decision on July 8, 2016, finding Defendant guilty of the three charges brought against her. (See ids.) Specifically, Abelson found Defendant violated "Article X, Section 2(F) of the AFSCME Constitution for failure to abide by the Preble decision and remit to [Local 2187] her overpayment of her salary during her tenure as President[,] . . . . violat[ed] . . . Article X, Section 2(B) . . . for an unauthorized expenditure in the amount of $2,827.95[,] . . . . [and] violated Article X, Section 2(B) when she [] remained on [Local 2187's] payroll after her removal as President on July 17, 2015 until November 30, 2015." (Doc. No. 1 ¶¶ 66, 68-69.) Abelson expelled Defendant from AFSCME membership and ordered her to reimburse Plaintiff $41,575.15 for salary overpayment, $2,827.95 for the purchased

---

[7] Of the four charged parties, only one attended the trial. (See Doc. No. 1-8 at 3.) Defendant did not attend the trial. (See id.; Doc. Nos. 1 ¶ 65; 6 at 6 ¶ 65.)

transcript, and $34,563.25 for the time she improperly remained on the payroll. (See id. ¶¶ 66-69.)

Defendant appealed Abelson's decision to the full Judicial Panel, and on September 23, 2016, the full Panel affirmed the decision. (See id. ¶ 70; Doc. No. 6 at 6 ¶ 70.) The filings do not indicate that Defendant pursued a final appeal of the full Judicial Panel decision.

### C. The Instant Case

On February 20, 2018, Plaintiff Local 2187 filed the instant action to compel Defendant to make the restitution payments. In Count 1 of the Complaint, Plaintiff alleges that Section 301 of the Labor Management Relations Act ("LMRA"), codified in 29 U.S.C. § 185, allows Plaintiff to "seek to enforce the AFSCME Constitution and recover remedies before this Court." (Doc. No. 1 ¶ 80.) Plaintiff contends that Defendant's "failure to abide by her constitutional obligation and pay restitution constitutes a breach of the AFSCME Constitution and harms [Local 2187,]" noting that Defendant owes "$78,966.35 under the Preble and Abelson decisions." (Id. ¶ 79.) In Count 2, Plaintiff asserts a breach of contract claim under state law on the ground that "[t]he AFSCME Constitution constitutes an enforceable contract under Pennsylvania law . . . ." (Id. ¶ 82.)

On June 15, 2018, pro se Defendant Marshall filed an Answer to the Complaint, in which she responds that she did not violate the AFSCME or Local Constitutions because she "never paid [her]self, [she] never signed checks[,]" and because "an error was made by the bookkeeper and the incumbent board members voted on [her] salary[.]" (Doc. No. 6 at 6-7 ¶¶ 74-80.) Defendant further states she "was not afforded a fair appeal process[,]" she is "unable to pay" restitution, and that she notified Local 2187 Administrator Chair of her "hardship in paying the amount requested." (Id. at 5-7 ¶¶ 54-55, 74-80.)

8

Apparently faced with mounting debt, Defendant filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Eastern District of Pennsylvania.[8] (See Doc. Nos. 11-12.) This Court then entered an Order on October 25, 2018 placing this case in suspense pending the outcome of Defendant's bankruptcy case. (Doc. No. 10.) On December 18, 2020, Plaintiff's counsel notified the Court that Defendant's bankruptcy case had terminated, and the Bankruptcy Court had "issued an order and decision finding that most of the funds sought by the AFSCME Local 2187 in this case are non[-]dischargeable . . . ." (Doc. No. 15 at 1); see also In re Marshall, 623 B.R. 123 (Bankr. E.D. Pa. 2020).[9] Therefore, Plaintiff asked that "this matter proceed[,]" (Doc. No. 15 at 2), and on December 21, 2020 the Court entered an Order taking the case out of suspense. (Doc. No. 16.)

As noted, before the Court is Plaintiff's Motion for Judgment of the Pleadings. (Doc. No. 9.) In the Motion, originally filed on September 13, 2018, just before the case was placed in suspense, Plaintiff argues that the undisputed facts support both claims in its Complaint and warrant judgment entered in its favor. (See Doc. No. 9-1 at 14.) In Count 1, Plaintiff claims that Defendant's "failure to pay restitution as ordered by the Abelson decision clearly constitutes a violation of the AFSCME Constitution in violation of Section 301" of the LMRA. (Id. at 19.) And in Count 2, it avers that Defendant's "breach of the AFSCME Constitution constitutes a

---

[8] "When a debtor files a petition for bankruptcy, the Bankruptcy Code protects the debtor's interests by imposing an automatic stay on efforts to collect prepetition debts outside the bankruptcy forum." City of Chicago, Illinois v. Fulton, 141 S. Ct. 585, 589 (2021) (citation omitted); see also 11 U.S.C. § 362(a).

[9] The Court takes judicial notice of the part of the Bankruptcy Court Opinion ruling on Defendant's non-dischargeable debt that is directly at issue in this case. See Grey v. Johansson, No. 15-2479, 2016 WL 1613804, at *4 n.5 (E.D. Pa. Apr. 22, 2016) (quoting Hynoski v. Columbia Cty. Redevelopment Auth., 941 F. Supp. 2d 547, 555-56 (M.D. Pa. 2013)) (explaining that a court can take judicial notice of "the rulings issued by [a] court of record.").

9

breach of the Local Constitution[,]" and a breach of the Local Constitution is a breach of contract under Pennsylvania state law. (Id. at 21.)

In the Order taking this case out of suspense, the Court directed Defendant to file a Response to the instant Motion by January 26, 2021. (See Doc. No. 16.) No Response was filed.

### III. STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a motion for judgment on the pleadings, a court must consider only those documents contained in the pleadings. See Moco Invs., Inc. v. United States, 362 F. App'x 305, 307 n.4 (3d Cir. 2010) (explaining that the district court's consideration of documents outside the pleadings converted the motion for judgment on the pleadings into a motion for summary judgment). A motion for judgment on the pleadings is analyzed under the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir. 2004) (explaining that "there is no material difference in the applicable legal standards" for Rule 12(b)(6) and Rule 12(c) motions).

Like a motion to dismiss, "[u]nder Rule 12(c), judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (quoting Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290 (3d Cir. 1988)). The Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [the court] construes them in a light most favorable to the non-movant." Id. (alteration in original) (quoting Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018); Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)).

Under Eastern District of Pennsylvania Local Rule 7.1(c), "any party opposing [a] motion shall serve a brief in opposition together with such answer or other response that may be

appropriate, within fourteen (14) days after service of the motion" unless the Court directs otherwise. Loc. R. Civ. P. 7.1(c). "In the absence of timely response, the motion may be granted as uncontested . . . ." Id. Here, pro se Defendant Marshall has not filed a Response in Opposition to the instant Motion for Judgment on the Pleadings. Nevertheless, the Court will address the Motion on the merits. See Smith v. City of Philadelphia, No. 06-3688, 2008 WL 2221894, at *1 n.6 (E.D. Pa. May 28, 2008) ("Because [p]laintiff is appearing pro se in this matter, the [c]ourt will conduct a merits analysis despite his failure to respond to the [m]otions.").

## IV.   ANALYSIS

In the instant Motion for Judgment on the Pleadings, Plaintiff asks the Court to "enter judgment in its favor[] and against Defendant Jacqueline Marshall" on Counts 1 and 2 of the Complaint. (Doc. No. 9 at 2.) As previously noted, Count 1 alleges breach of contract under Section 301 of the LMRA, and Count 2 alleges breach of contract under Pennsylvania state law. (See Doc. No. 1 at 1.) Plaintiff argues it is entitled to judgment on the pleadings because the undisputed facts support both claims against Defendant for her violation of the AFSCME and the Local Constitutions. (See Doc. No. 9-1 at 14.) Each claim will be discussed in turn.

### A.   Count 1: Breach of Contract under the LMRA and Dismissal for Lack of Subject Matter Jurisdiction

In Count 1 of the Complaint, Plaintiff avers that Defendant violated the AFSCME Constitution by "[h]er failure to abide by her constitutional obligation and pay restitution" pursuant to the Preble and Abelson Judicial Panel decisions. (Doc. No. 1 ¶ 79.) It further avers that "[u]nder Section 301 of the LMRA, [Local 2187] may seek to enforce the AFSCME Constitution and recover remedies before this Court." (Id. ¶ 80) (citing 29 U.S.C. § 185(a)); see also (Doc. No. 9-1 at 16 n.3).

Section 301(a) of the LMRA (Taft-Hartley Act) is codified in 29 U.S.C. § 185(a) and provides as follows:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). In 1981, the Supreme Court held that "a union constitution is a 'contract' within the plain meaning of [Section] 301(a)[.]" United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, AFL CIO v. Local 334, United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, 452 U.S. 615, 622 (1981) ("Journeymen"). In reaching this conclusion, the Court looked to Congressional intent in enacting Section 301(a) and explained that:

> Surely Congress could conclude that the enforcement of the terms of union constitutions—documents that prescribe the legal relationship and the rights and obligations between the parent and affiliated locals—would contribute to the achievement of labor stability. Since union constitutions were probably the most commonplace form of contract between labor organizations when the Taft-Hartley Act was enacted (and probably still are today) . . . we cannot believe that Congress would have used the unqualified term "contract" without intending to encompass that category of contracts represented by union constitutions. Nothing in the language and legislative history of [Section] 301(a) suggests any special qualification or limitation on its reach, and we decline to interpose one ourselves.

Id. at 624-25. And after making clear that a union is a "labor organization representing employees in an industry affecting commerce as defined in" Section 301(a), the Court in Journeymen ultimately held that federal courts have jurisdiction under Section 301 to hear suits brought by a local union against its parent international union. See id. at 622-23. Ten years later in Wooddell v. Int'l Bhd. of Elec. Workers, Local 71, the Court extended its holding in Journeymen to "suits on union constitutions brought by individual union members." 502 U.S. 93, 94 (1991).

When unions filed suit under Section 301 against individual members for violating union constitutions, however, courts were hesitant to extend Journeymen to union-initiated suits. Two years before Wooddell, the Ninth Circuit Court of Appeals in Bldg. Material & Dump Truck Drivers, Local 420 v. Traweek thoroughly discussed this issue and concluded that federal courts did not have jurisdiction under Section 301 to hear union-led suits against individual members. See 867 F.2d 500, 508 (9th Cir. 1989). In Traweek, members of a local union's executive board submitted two separate sets of charges with the international and local union, alleging that the defendants—the secretary-treasurer and vice president of the local—"had expended union funds contrary to the union's by-laws and the International Constitution." Id. at 503. The first set of charges were filed with the international union's Joint Council, and the second set of charges were filed with the local union's executive board. See id. at 503-04.

On the first set of charges, the Joint Council ordered the defendants "to repay the $40,000 drawn from the [l]ocal's accounts and suspended them from the union for one month or until repayment, whichever occurred last." Id. at 504. On the second set of charges, the local executive board ordered the secretary-treasurer defendant "to repay the last $15,000 withdrawn from the union account, fined him $5,000 as a penalty, and expelled him from the union for five years." Id. After the defendants' unsuccessful appeals to the international union, the local union filed suit against the defendants "for recovery of the funds" pursuant to Section 301 of the LMRA, codified in 29 U.S.C. § 185, and other federal and state statutes. Id. at 505 & n.2. "The district court found for the [local] on the . . . § 185 claim[] and directed [the defendants] to repay the amount of the checks written without authorization, totaling $55,000 plus interest." Id. at 505. The defendants appealed, and the Ninth Circuit reversed the § 185 claim for lack of subject matter jurisdiction. See id. at 513.

13

The Ninth Circuit noted that "[i]n discussing the legislative purpose behind the enactment of § 185, the Supreme Court [in Journeymen] focused on the accountability of union organizations and employers, not union members." Id. at 507. "If we were to expand the jurisdictional scope of § 185 in the manner advocated by [the local union]," the Ninth Circuit cautioned that "a union could sue an individual union member in federal court for any failure to comply with by-laws or the constitution." Id. at 508. "Thus, any time a union member failed to pay dues or committed a minor infraction of union rules, the federal courts would provide a forum in which to demand payment or to settle internal squabbles. . . . Clearly this possibility does not comport with the congressional intent behind § 185." Id.

Three years later, the Second Circuit Court of Appeals in Shea v. McCarthy reached a similar conclusion, finding that courts only have jurisdiction under Section 301 to hear suits by unions against individual union officials for violating a union constitution "[t]o the extent that the[] cases deal with equitable relief[.]" 953 F.2d 29, 31-32 (2d Cir. 1992) (emphasis added). District courts have since held the same. See, e.g., Baltimore Mailers Union No. 888 v. Moore, 881 F. Supp. 217, 218 (D. Md. 1995) ("Section 301 [§ 185] does not confer federal jurisdiction over suits seeking contract damages against an individual member for breach of, e.g., a union constitution. . . . this Court lacks federal subject matter jurisdiction[.]"); Int'l Union of Operating Engineers Loc. Union No. 17 v. Lexo, 918 F. Supp. 69, 73-74 (W.D.N.Y. 1995) ("[P]laintiff has not cited any cases in which the federal court has allowed a suit to enforce an award against an individual union member rendered pursuant to internal union procedures, . . . . Accordingly, I find that the court lacks subject matter jurisdiction over this case[.]"); Int'l Bhd. of Teamsters Loc. 651 v. Philbeck, 423 F. Supp. 3d 364, 370 (E.D. Ky. 2019) ("The Court can exercise jurisdiction over Philbeck for alleged violations of the IBT Constitution but only to the extent that Local 651 is seeking injunctive

relief.").[10]

Here, Plaintiff asserts a Section 301 claim against Defendant "to obtain the restitution ordered by the Judicial Panel for violations of the AFSCME Constitution[.]" (Doc. No. 9-1 at 18.)[11] After the first Judicial Panel hearing, "Preble . . . found [Defendant] guilty of overpayment of her salary, ordered her to pay restitution to [Local 2187] for said overpayment, and ordered her immediately removed as the Local's President." (Id. at 2.) After the second Judicial Panel hearing, "Abelson held that [Defendant's] failure to pay restitution constituted a violation of Article X, Section 2(F) of the AFSCME Constitution." (Id. at 19.) But in accordance with the court decisions noted above, this Court does not have subject matter jurisdiction under Section 301 "to enforce an

---

[10] See also Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers, AFL-CIO v. Statham, 97 F.3d 1416, 1422 (11th Cir. 1996) (citations omitted) ("[T]here can be no action for damages against individuals under section 185(a). . . . However, the union has expressly limited its section 185(a) claim to seek only equitable relief. This fact distinguishes our case from Traweek, 867 F.2d at 508, which was a suit for money damages."); Loc. 443, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Pisano, 753 F. Supp. 434, 436 (D. Conn. 1991) ("[U]nions are rarely permitted to sue individuals [under § 185]. When such suits have been permitted they have involved only claims of equitable relief.").

[11] In this regard, Plaintiff also relies upon Lewis v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Loc. Union No. 771, 826 F.2d 1310 (3d Cir. 1987) to argue that it "has a clear and valid Section 301 claim" because it is a "third-party beneficiary of the terms of the AFSCME Constitution." (Doc. No. 9-1 at 18.) Plaintiff asserts that "[w]ithout a Section 301 suit, [Local 2187] has no means to obtain the restitution ordered by the Judicial Panel for violations of the AFSCME Constitution, and, therefore, the very accountability sought by Congress in passage of [the] statutory provision would be thwarted." (Id.)

In Lewis, the Third Circuit held that "a federal court has jurisdiction under section 301(a) over suits brought by an individual union member against his or her local union or the international union for violation of a union constitution." 826 F.2d at 1314 (emphasis added). This holding, however, does not support the proposition that federal courts have jurisdiction under Section 301 over suits brought by a union against an individual member. Moreover, as discussed in Section IV.A, supra, the legislative intent behind Section 301 "focused on the accountability of union organizations and employers, not union members." Bldg. Material & Dump Truck Drivers, Local 420 v. Traweek, 867 F.2d 500, 507 (9th Cir. 1989). Therefore, Plaintiff's reliance upon Lewis is misplaced.

15

award against an individual union member rendered pursuant to internal union procedures[.]" Lexo, 918 F. Supp. at 73. Like the plaintiff-union in Traweek, Plaintiff Local 2187 is asking this Court here to enforce the Judicial Panel decisions and order Defendant to repay it a sum certain. Doing so, however, would not "comport with the" language of and the "congressional intent behind § 185." Traweek, 867 F.2d at 508.

Accordingly, Plaintiff's Motion for Judgment on the Pleadings as to Count 1 will be denied because this Court lacks subject matter jurisdiction over Plaintiff's Section 301 claim. Count 1 therefore will be dismissed for lack of subject matter jurisdiction.[12]

### B. Count 2: Breach of Contract under Pennsylvania State Law and Dismissal Without Prejudice

In Count 2 of the Complaint, Plaintiff alleges a breach of contract claim under Pennsylvania law. (See Doc. No. 1 at 1.) Plaintiff contends that it and its members were harmed when Defendant "breached her contractual and legal obligations as a member and officer of AFSCME and [Local 2187 by failing] to . . . pay restitution to [Local 2187], pursuant to the AFSCME Constitution, for the overpayment of her salary during her tenure as President of [Local 2187]." (Id. ¶¶ 83-84.) Additionally, Defendant's "failure to abide by the Preble and Abelson decisions has resulted in attorney's fees and costs to [Local 2187] to recover the monies . . . ." (Id. ¶ 85.)

Where a federal court has subject matter jurisdiction over a claim, it "shall have supplemental jurisdiction over all other claims that are so related . . . that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). However, a "district court[] may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction." § 1367(c)(3). And "[w]here the claim over which the district court has

---

[12] See Pisano, 753 F. Supp. at 435 ("When federal subject matter jurisdiction does not exist the court must dismiss the claim.").

16

original jurisdiction is dismissed before trial, the district court <u>must</u> decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for [not] doing so." <u>Shrieves v. Philadelphia Facilities Mgmt. Corp.</u>, No. 19-4865, 2020 WL 7240450, at *13 (E.D. Pa. Dec. 8, 2020) (quoting <u>Hedges v. Musco</u>, 204 F.3d 109, 123 (3d Cir. 2000)). Here, this Court's jurisdiction over Count 1 was premised on 28 U.S.C. § 1331 federal question jurisdiction.[13] (<u>See</u> Doc. No. 1 ¶ 5.) Since Count 1 will be dismissed for lack of subject matter jurisdiction, the only remaining claim is Count 2—breach of contract under Pennsylvania state law. There is no independent basis to exercise federal jurisdiction over this claim apart from supplemental jurisdiction.

In the instant Motion, Plaintiff focuses on Defendant's violation of the Local's Constitution in arguing that judgment on the pleadings should be granted in its favor on Count 2. (<u>See</u> Doc. No. 9-1 at 21.) Plaintiff claims that "violations of a local union constitution do not fall within the purvey of Section 301[,]" but Pennsylvania courts have recognized that the constitution and by-laws "of an unincorporated association have been said to be the contract of association of the members." (<u>Id.</u> at 20) (first citing <u>Korzen v. Local Union 705, Int'l Bhd. of Teamsters</u>, 75 F.3d 285, 288 (7th Cir. 1996); then quoting <u>Gordan v. Tomei</u>, 19 A.2d 588, 592 (Pa. Super. 1941)). Therefore, Plaintiff submits that its Motion should be granted on Count 2 because "[t]he undisputed facts demonstrate . . . [Defendant] breached the Local Constitution when she failed to pay restitution to [Local 2187] for her salary overpayment. The Local Constitution required [Defendant] to abide by the AFSCME Constitution—the latter of which obligated [Defendant] to pay restitution in the event a Judicial Panel so ordered her to do so." (<u>Id.</u> at 21.)

---

[13] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

17

This Court, however, will decline to exercise supplemental jurisdiction over Count 2. "There are no considerations of judicial economy, convenience, or fairness to the parties providing this Court with an affirmative justification for retaining jurisdiction" because this case did not proceed through discovery, "all parties are Pennsylvania residents[,] and the only remaining cause[] of action arise[s] solely under Pennsylvania law." Flood v. Sherk, 400 F. Supp. 3d 295, 317 (W.D. Pa. 2019).[14]  Moreover, because this case is at the pleading stage, the proceedings are early enough to justify dismissal, and Plaintiff has the option of seeking relief, if warranted, in state court.

Accordingly, Plaintiff's Motion for Judgment on the Pleadings as to Count 2 will be denied because the Court will decline to exercise supplemental jurisdiction over the state law claim. Count 2 will be dismissed without prejudice.[15]

## V.     CONCLUSION

Because the Court lacks subject matter jurisdiction over Count 1 of the Complaint and declines to exercise supplemental jurisdiction over Count 2, Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 9) will be denied, and this case will be dismissed.  An appropriate Order follows.

---

[14] See also Shrieves v. Philadelphia Facilities Mgmt. Corp., No. 19-4865, 2020 WL 7240450, at *13 (E.D. Pa. Dec. 8, 2020) (citation omitted) ("There is no reason to retain jurisdiction over Shrieves's state law claims, which he may assert in state court. . . . Therefore, we decline to exercise supplemental jurisdiction . . . ."); Flood v. Sherk, 400 F. Supp. 3d 295, 316 (W.D. Pa. 2019) ("There is no independent basis for the [c]ourt to exercise jurisdiction over any of these claims . . . because they are Pennsylvania-law claims brought by Pennsylvania residents against Pennsylvania residents, . . . and . . . there is no original jurisdiction due to . . . the presence of a federal question, 28 U.S.C. § 1331."); Segers v. Williams, 12 F. Supp. 3d 734, 741 (E.D. Pa. 2014) (declining to exercise supplemental jurisdiction over the plaintiff's state law tort claims because there was no affirmative justification for doing so after dismissing the federal claims).

[15] See Kach v. Hose, 589 F.3d 626, 650 (3d Cir. 2009) ("If a district court decides not to exercise supplemental jurisdiction and therefore dismisses state-law claims, it should do so without prejudice, as there has been no adjudication on the merits.").